The next matter, number 25-1048, Charles Reddicks v. Lizotte. At this time, the counsel to be appealed, please come to the podium and introduce yourself. Good morning, Your Honor. May it please the Court. My name is Rosemary Scappiccio and I represent Charles Reddicks on his appeal from the denial of his Hague petition after a certificate of appealability was issued. I'd like to address two issues that hopefully I can get time. I'm sorry, may I reserve a minute for rebuttal? Thank you. I'd like to address two issues here that I think I can do in the time allotted. The first is whether or not the running of jurors' records, running query records, in this case, is motivated even in part by race. Because if this Court finds that it is motivated in part by race, then Batson applies and the Court has to make the determination as to whether or not the District Court erred in finding that the decision of the Appeals Court here, where they said it was obvious why the Commonwealth had exercised a challenge, in this case, rests on a set of facts that are apparent from the record. What we want the Court to understand is running a juror's record with the juror questionnaires that are involved in this case is once we acknowledge that the black and brown community are over-criminalized, that they're stopped more by police officers, that there's more FIOs, that there's more arrests, if we acknowledge that, and the Court does, the State Court acknowledges that that happens, and they've acknowledged that the black and brown community is over-policed, then you have to look at what the real motivation for a prosecutor is to run criminal records. Because there is no correlation whatsoever between running a criminal record and being a fair and impartial juror. What we do know there's a correlation about is that when you run criminal records, the majority of the people whose records come up are black and brown. In this case, all six people whose records were contested were black people, people from the black and brown community. And so because it doesn't have anything to do with your ability to be fair and impartial, can the Court and should the Court have inferred that it was motivated at least in part by race? And I say that because it's the only issue on the jury questionnaire that the Commonwealth consistently asks for additional information from. So the questionnaires are signed under the pains and penalties of perjury, and we believe jurors when they say they haven't worked for the government. We believe jurors when they say they haven't worked for the police department. We believe jurors when they say they haven't filed any civil cases. But we don't believe jurors when they say they haven't had any criminal interaction sufficient to make their jury service not fair and impartial. It's the only thing on the questionnaire. And this is happening, especially in Suffolk County, for the last 10 years. And every single time they run the records, what happens is there's invariably an explanation for why the juror didn't put it on their record. In this case, Juror 47 and Juror 122, one of them said the cases were dismissed, so I didn't think I had to put it on. And another one said that in this case, the cases were sealed. And I told you about the case that wasn't sealed, but I didn't think I had to tell you about the case that was sealed. Once the judge makes the finding that the juror is not being in any way evasive, the juror was not intentional in trying to mislead the court at all, we're back to the race issue. Do you get to excuse the juror because they interpreted this question in a way that didn't apply to them? And when you look at the ultimate decision in this case to challenge those jurors, it comes back to the running of the records. And if the court or the come-up could come up with even any correlation, any study that says running of the criminal records somehow makes this more of a fair and impartial jury, I wouldn't have a leg to stand on. But there's not a single solitary ounce of evidence that suggests running criminal records is anything other than racist, because that's what it is. It's a racist process that's been accepted by the state court that should not be endorsed by this court at all, because it doesn't have any correlation. And it's the only thing that any of the Commonwealth believes needs to be addressed in any way, shape, or form. Especially in this case. When we get to what happened here with these two jurors... Since we're on habeas... Yes, I get it. I get that I'm hanging off of a 60-story building by my fingernails. I understand that we're looking through... So help me... So this is what I'm saying. This is how we get around the habeas issue. Not get around, we get through it. The way that we get through it is, if you find that the decision of the appeals court and ultimately the district court was wrong because the running of the criminal records is motivated in part by race, that brings it... The standard we have to use... Unreasonable application of... So what is some authority you have that would suggest the determination that it was an unreasonable application? If it's... I'm not saying this isn't sufficient. I'm just saying it sounds like what you're saying is just common sense, the facts of the world, the way we understand the world just shows on its face it's an unreasonable application. Is that the idea? Yes. Is there any authority that backs that up? It says if real-world evidence says it's unreasonable, then it should be unreasonable. And it's related to this context that would provide a basis for us saying that no reasonable juror could think other... Well, I think... Well, do I know a case off the top of my head? No, Judge, I do not. But what I'm suggesting is that you have the discretion to look at this issue if you find. It doesn't have to be completely motivated by race. I'm not saying that anyone is up there saying, waving a flag and saying, we have to do this. I'm saying if it's motivated in part by race. And when you evaluate what's happened in Mr. Reddick's case, there's no other explanation other than race. There's no... I have other questions on this point. Could you address the voluntariness? The voluntariness of... The voluntariness issue, the question about the statements. Okay, sure. So with respect to... Can I make one more comment? With respect to the two challenges, 47 and 122, I want the court at least to understand that Mr. Reddick's argument is that once the judge finds that they weren't in any way trying to obviate the court or hide their records at all, then it comes right back to the race issue and that's what you guys have to decide. In terms of the... Can I just clarify what I think you're saying? As it applies to the Batson issue, as to that Step 1, in grounding your objection in the Corey search, that's how you established Step 1? That's how everybody understood that Step 1 was established. Because we filed a motion of limine saying you shouldn't be running these Corey records. Then we argued that they shouldn't have been run. We argued when they came back that it was all six black jurors that came back. And at that point, we argued that, at least with respect to 147... I'm sorry, 122, we argued that it was race-based. And so the court never evaluated that argument based on the idea that if you add 47 to 122, does that become a pattern? Nobody ever evaluated that argument. And I think that the court has to take a look at whether or not a pattern has developed. And what do you need to say, essentially, to satisfy Step 1? The judge understood it was Step 1 because the judge stopped her proceedings. And she made a comment on the record saying, as to the sidebar conversations when we were paneling the jury, I want the record to be clear that there are five African-American and black jurors seated on the panel. She understood it was race-based. The court understood it was race-based. We certainly understood it was race-based. And the court found that we didn't make an adequate challenge. And I... I don't want you to use up too much of your time because I'm also interested in the issue of the statements. OK, so I will move on to the statements. Have I adequately answered your question? Thank you. I'll move on to the issue of the statements. So here we have an 18-year-old kid. He was probably three or four days past his 18th birthday. He gets arrested. He gets interviewed by the police, where they call him a psychopath, they call him a murderer, and they tell him, under no circumstances, that this is the only opportunity he has to tell his side of the story. They tell him in a number of occasions that they don't want to be sitting across from him at the trial, staring at him, where he's not going to have the opportunity to make a statement and have to testify against him under those circumstances. The court found at first that certainly... Did they also say that they would use the statements, that the silence could be used against him or not? I don't remember. I can send a letter to that judge. I just don't remember off the top of my head. I think there was an inference that if he didn't say anything, it would be used against him, Judge, but I can't... I thought you had argued that. Yeah, I believe that it was, that if he didn't say anything now... It was a now or never argument. If he didn't say it now, they were going to be able to use it against you later. And ultimately, he makes a statement. And first of all, the appeals court says, yes, they pressured him, the now or never language should never have been used. They found that that was error. But they found it didn't matter because he didn't confess, because he kept denying that he was there. But what they didn't look at is the closing argument. When you look at the prosecutor's closing argument in this case, he points no less than five times to Mr. Reddick's statement. And that definitely goes to the prejudice portion of it, so I get that. But just zeroing in on the question of whether the analysis by the MAC of the voluntariness issue is an unreasonable application or not, they say two things as I read the opinion. The first is these are... He never confesses, so he never makes an inculpatory statement. I understand you partly saying that's not really the right analysis because he still spoke, and then what he said is then used to his disadvantage later, so that's prejudicial, and he didn't have any reason to speak at all. And if they unduly coerced him into speaking, that itself is a problem. Yes. So if that's where they had stopped, it would seem to me like there would be a problem with the analysis. But then the MAC goes on to say he was calm, he was in high school, he didn't seem so, and then they conclude, taking the totality of the circumstances as a whole, we conclude his will wasn't overborn. So that has to be an unreasonable application, right? That's exactly... So just help me figure out, given that last part of what the MAC says, why isn't that an indication that they've just looked at everything and taking this whole scenario, we're just saying his will wasn't overborn? What about it makes it unreasonable, from your point of view, the way they did the analysis? He was a young man just past his 18th birthday. Is there anything besides that? Yes, the fact that he had a lack of criminal involvement in the criminal enterprise, Judge. He had one other case. The great thing about the analysis... The analysis... ...that the MAC does in that first portion of its analysis, where it's talking about the fact that he didn't confess, that renders the analysis as a whole unreasonable. Yes, so the fact that he didn't confess isn't the standard, and that's where it's unreasonable, Judge. And in terms of him not confessing, if he was there to sell drugs and not kill anybody, he might not want to tell the police he's there to sell drugs because he thinks he's going to get in trouble. That doesn't make him a murderer. That doesn't make him not responding to their questions. So if he was there to sell drugs, then that's certainly a perfect reason that he might not be completely truthful with the police. They don't even acknowledge that possibility, and that certainly was a possibility that was developed at trial. And so if he was there to sell drugs and nothing more, and this happened either before or after he got there, then of course he's going to have interactions with the police where he's not going to be... There's nothing, I take it, in the transcript where he says anything affirmatively like, I know I don't have to speak, but I'm going to speak anyway, or anything like that. No, there's nothing that suggests he understands anything other than what the police told him. And what the police told him is it's now or never. You speak now or you're never going to have the opportunity to do that. And finding that there is error, and then finding that an 18-year-old in these circumstances where he doesn't make any statements somehow understands that he had the opportunity later on during trial to make that, and that's what made this voluntary. And I would suggest that that's what makes the whole thing involuntary. The fact that there is no statement from Mr. Reddick saying, I understand that I can do this later. That they're using his mother. The fact that he comes from a good family. They're using everything in their power to try to coax a statement out of him. And they were successful. And the fact that the appeals court said that they weren't because he didn't say, I did it. But he said, I wasn't there, I wasn't driving my grandmother's car. And then the Commonwealth came back at the closing argument and said, we know he's lying because he was there. We know he's lying because the grandmother's car was there. We know he's lying because he maybe lies up in his head because he knew he did it. That's how they use the statement. So to say that it begins and ends with being exculpatory is the unreasonable application judge. And I know my time is up if anyone has any additional questions. Thank you. Thank you, counsel. At this time would counsel for the result please introduce themselves. May it please the court. Good morning. Assistant Attorney General Tara Johnston on behalf of the respondent. I am going to address both of the issues that my sister raised. I want to begin just by clarifying a couple of things about the interview here and the MAC's findings with respect to the voluntariness of the statement. I just want to be clear because there seems to be some questions as to whether or not the MAC, there's some unreasonable application because the MAC was focused on the fact that Mr. Reddick did not make a confession. And I don't think that is an accurate characterization of the MAC's decision here. The MAC was reviewing the case as inconsistent with Miranda of Arizona and its progeny in terms of looking at the voluntariness of the statements at the totality of the circumstances. And they were looking at the fact that the now or never language here that was impermissible was intended, clearly intended, for the purpose of eliciting a confession. Why is the intention of the interrogator of any relevance to the voluntariness of the defendant? Well, it was because it was what the, it was eventually that, that the, in the, what the, in turn, in turn, I guess. The defendant has no idea what the intention of the interrogator is. All the defendant knows is you're telling me I better say something. No, that's, that's not actually. Based on the, based on the statements of the, of the officers. The officers saying we want you to give us a motive. We want you to tell us the reason why. That was, that was the, that was the type of statement they were making. They weren't just saying just say something. Because Mr. Medix had already made statements. If you don't speak now, you'll never have another chance. Correct? It was, it was. The part that's impermissible. Correct? It was, it was along those lines. It was that the actual statement was this is a golden opportunity to give you a version of the events. And they, they went on to say now you'll never, you're going to be in a courtroom and I'm going to be sitting across from you. This is your big opportunity. That was the, that was the, that was the tenor of the, of the statement. And they went, they went on to say please tell us what was your motive. Do you want anybody to think you're a cold-blooded kiddo, killer? But in response to that, Mr. Medix, the type of statements that Mr. Medix is making before and after those statements were made did not change. That statement is made at page 24 of the interview. Prior to that. I thought a possible objection was to saying something improper that would induce a statement to be made when no statement had to be made at all. Isn't that right? Well, prior statements had been made by Mr. Medix that were of the same nature that were made subsequent to the statement. Before the impermissible statement? Yes, Your Honor, yes. Did the MAC find that? The MAC found, the MAC found, yes, the MAC found that the type of statements that were made before and after the interview, and certainly the motion judge found that at the hearing, you had the opportunity to view the video of the, of the interview, that the nature of the statements that were made did not change. In the beginning of the interview, you have Mr. Medix denying that he was ever at that location, even though there was clear evidence at trial. That showed that his car, that the car that he was driving, his grandma That's before any statements made by interrogators that the MAC thought was impermissible? Yes, Your Honor, that is before the Now or Never language came in. So certain statements were made before the Now or Never language came in that was of the same nature. Complete denial of having been at that location. The MAC doesn't make that point in its analysis, does it? I think that the MAC does in saying that the type of statements that Mr. Medix was making did not change throughout the interview. So I think that that was, and that was certainly the findings of the motion judge. Throughout the interview language is referencing statements that preceded the impermissible. Yes, Your Honor. Yes, Your Honor. So the impermissible statements are made to page 24 of the interview. Before that portion where the Now or Never language is used, Mr. Medix denies having ever been at that location. He mentions that his phone was lost or stolen, even though this was April 27th and there was clear evidence at trial that on May 1st was when he actually canceled the phone. And then following subsequent to those statements, he makes the impermissible language by the officers. Mr. Medix does make other statements. But again, some of those statements are admitted at trial. Again, it is the type of statements to show that he is lying to them. And after those statements are made, he does not, in response to the Now or Never language, but later on in the interview, he does admit to having text exchanges with the victim regarding drug transactions. He does admit to knowing Ian Follett, although he denies having spoken to him for a while. So there are some other statements, certainly, that are admitted at trial. But all of them go to the fact that throughout the interview, he is lying to the police. Again, I want to make this clear. The NAC took into account Mr. Medix's age. They also took into account the fact, the tenor of the interview itself, and the fact that his demeanor did not change throughout the interview. And this was actually a pivotal point of the motion judge's decision below, who denied the motion to suppress originally, is that there was no yelling during the interview. There was no raising of voices. These were findings by the motion judge. And that the general demeanor of Mr. Medix did not change throughout the  He was giving articulate answers. According to the motion judge, he appeared to be of average intelligence or above. He did not change his demeanor throughout the interview. Throughout the interview, from the beginning to the end, he continued to deny having been at the location where the murder happened, and to know nothing about it, and continued to deny his involvement. There is no suggestion here that his will was overborne. And that is essentially the test. And here, the question is reasonableness. Was the NAC's determination reasonable? And under Miranda v. Arizona and its progeny, Mr. Medix simply has not established that the NAC's determination was a reasonable application of Supreme Court precedent. Unless there's any other questions on that issue, I am going to turn to the jury selection issue. With respect to that issue, as throughout, it has been clear from trial to habeas, Mr. Medix has been arguing that query records of jurors should not be run. And that is the focal point of the argument in that it violates, that it is somehow violative of the Equal Protection Clause and or his Sixth Amendment right to a partial jury. However, one, there is no, as this court was well aware, there is no Supreme Court case holding that the running of query records is unconstitutional. It has been accepted practice in Massachusetts. In 2007, in Commonwealth v. Cousin, the Supreme Judicial Court said that it is permissible to run query records. This is consistent with what other circuit courts have found, that running of query records assists prosecutors in a prosecutorial function in helping to assist with selecting an impartial jury. Now, I understand that Mr. Medix's argument should be that the running of query records is resulting in discrimination. But there was no development of the record on that point. With respect to here, the MAC, because they were given no constitutional standard by Mr. Medix under which to evaluate the claim, they evaluated it under Dern v. Missouri. And under Dern v. Missouri, clearly here African Americans are a distinctive group in society. And the two jurors that were stricken, jurors number 47 and juror number 122, who were objected to who were African Americans and had query records, they were African American. However, Mr. Medix never developed the record on the second prong. He never showed the racial composition of the community. He never showed any evidence about the racial composition of the jury Skipping past the query thing directly, what about, is it 147? No, 47 and 142? It's jurors number 47 and jurors number 122, yes. And I can't remember if it's 47 or 122, but there's a separate argument in the briefing to us that there was just a straight up Batson challenge to the striking of that juror. It's query informed, but it's not I'm objecting on Batson grounds to the use of the query record. I'm now just objecting to the exclusion of this juror on the ground that I think as to this juror, it's race-based. That's how it's framed to us in the briefing. I take it you say that's not what happened. I'd say that's not accurate, Your Honor. I just want to respond to that. So with respect to juror number 47, as this court recognizes, that was just, that race wasn't mentioned at all. With respect to juror number 122, race was mentioned, but it was not in the context of the prosecutor's purposely striking jurors on the basis of race. To the contrary, when defense counsel made that objection, she said, I'm not blaming the prosecutor. She put, it was framed in, the framing of that, the context of that, was the running of query records. I've objected all along to the running of query records. And we see the running of query records results in the exclusion of African-American jurors, because all of the six jurors who came back with query records were African-American. It was in that context. It was not in, I'm running a Batson objection. It was not in the context of the prosecutor's purposely striking jurors based on race. And in order to make a primer facia showing, not only would she have to make a clear Batson objection, but she also would have had to present some statistical, some evidence to show, to indicate that the prosecutor was purposely striking jurors on the basis of race. And she absolutely did not do that here. And the record suggested otherwise. I also just want to make another quick point to respond to my sister's argument in that when, I know she argues that it was clear to everybody, it would have been clear to everybody that he was raising a Batson objection, but I don't think that would have been clear at all. I don't think it was clear at all. And the trial judge made that statement. It was about the five African-American jurors being on the veneer. It was the end after jury empowerment. She made that point. And it possibly could have been because later thinking about it, she saw because of the motion women wrote was originally filed, that query records results in the exclusion of African-American jurors. But she did make that statement on the record, so we know that. And that is something, a factor we can take into account. But it was also not at all clear that she was making a Batson objection. But I still reasonably found even if you could construe the objection to juror number 122 as a Batson objection, the trial judge implicitly determined that a prima facie showing had not been made. And that is because the evidence simply was not developed on that point. And to be clear, and I encourage this court to do so, if the court looks at the questioning of the jurors, although we do not know, we don't have evidence of the racial composition of the entire jury, we do know that six of the jurors, we know six of the jurors who were African-American. Those are jurors number 8, jurors number 28, 29, 47, 102, and 122. It's clearly stated in the Max decision. We know that. And if the court does look at the question. One step on the prima facie point. In your read, the MAC has a fallback conclusion that as to 122, there is an implicit determination that no prima facie case was made? Yes. But is that the same? I forget how we review the trial judge's assessment of the prima facie case. Is that de novo? So I would say that that is, no, I would say that that's under, that would be under the, whether or not that was reasonable, 22. No, I'm saying in the normal Batson context. Yes, yes. So is the, I read to read the MAC as saying, no prima facie case was established. So it's irrelevant whether the trial judge actually made that implicitly or not? Correct, Your Honor. I would say that it's well supported by the record. Not only is there any statistical evidence presented by a petitioner to the trial court, or any evidence of disparate questioning. And again, I know my sister makes some arguments that there was disparate questioning based on the record. I encourage this court to review the record because it does not appear, that there is any between, if you look at those six jurors compared to other jurors. One follow up on that. Is there any significance or delta between these two possibilities? The MAC saying that as an independent ground for denying the Batson claim, there just is not a prima facie case. Yes. And the MAC saying the trial judge impliedly found there was not a prima facie case? I think it's the latter that you said is what the MAC said, right? They said that the trial judge implicitly found it. That's what I'm saying. If we were to look at it and say that there's just no indication that that's true. In other words, one reading of the record is there was a Corey objection that was rejected. There was a Batson challenge to 122. The trial judge misconstrued that as another Corey objection, so didn't address the straight up Batson challenge. The MAC then says, well, the trial judge impliedly understood there was a Batson challenge and did it on prima facie grounds. If that last link in the chain just doesn't seem plausible under the record, what are we supposed to do? I think that you can look at the MAC reviewing the record. I think even if this court reviews the de novo, you can see that there's no prima facie showing made by the defense counsel because there's no evidence put forth. I think there's no evidence put forth. Under Batson, the threshold is low to make a prima facie showing. There's no question. It is not an onerous standard. But there has to be something. There has to at least be a claim that the prosecutor is purposely striking jurors based on their race or gender or a letter to me here that wasn't. Let me ask you this. If the situation, the facts on the ground, are that you have a prosecutor, and I'm not saying that's this case. I'm just asking a question. You have a prosecutor who wants to exclude racial minorities. And they start with powers. You can't exclude even one on that basis. Absolutely. But if you exclude two, in the prosecutor's mind, it's I'm going to challenge several for cause. And then in the end, I'm going to take what I can get. Why wouldn't you just always just go to step two? Well, your Honor, I think there has to be some suggestion by the. Two. Right. And I. Two. So I think. Right. So I understand. So perhaps in some cases. Here the circumstances of this case were very different. And if I can just quickly elaborate. When you say perhaps in some cases, do you really mean that? Or is that just a rhetorical. No. I would say that if there's some showing that running the court records is being used as a proxy, as a pretextual reason to exclude African-American jurors, absolutely. The court should do that. But here. So I think in each case it's very fact specific. And here the record does not bear that out. And if I could just quickly explain why. First of all, at the time that jury number 47 was stricken, the court record for jury number 122 hadn't even been run. And so also at the beginning, this was how this trial was run. But at the beginning, before the jurors were even, jury budget even started, the judge here clearly stated to both parties, I just want to be clear, and it's before the jury budget starts, I just want to be clear that parties, after the court records come back, if somebody is already impaneled, and then court record comes back, and there's evidence that there was undisclosed criminal history on their court record, I'm going to give the parties an opportunity to exercise a preemptory challenge. Then, later on, the first set come back, and there's four African-American jurors who are impaneled. One of them has a, all four of them have, I think all four of them, maybe three of them, and one person who's already disclosed, but at least three of them have undisclosed criminal histories. For all four, so there's only one that the prosecutor requests of Wadhirab, and that's jury number 47, and this is a longer criminal history. For the rest, the prosecutor does not even ask to do any more questioning. They say, I'm still content. So that suggests that it's based on the nature of the offenses. Does it for Wadhirab, and strikes the jurors again. There's no doubts in challenge at all at that point, not whatsoever. It just says, the defense counsel just says, I'm going back to my original complaint about one inquiry on prospective jurors, and I want to point out that the motion eliminating did not mention race at all. Now, maybe you could say, well, you can draw that conclusion, but the motion eliminating did not mention race. It's the first time race is mentioned at all, so jury number 122. The following day, you have two more jurors who come back, African-American jurors who are already impaneled, mind you. They're already impaneled. They both come back with evidence of a court record. For one, the prosecutor says, no, Wadhirab. For jury number 122, it's not even the prosecutor that asks to conduct a Wadhirab. It's the judge herself who notes that this is an extensive criminal history that wasn't reported. Either party, she herself says, either party might wish to exercise a strike of this person. I am sui sponte going to hold a Wadhirab, which she does. And although, no doubt, and I don't disagree with my sister on this, the judge credits the explanations of both jurors. Number 47, with respect to, shouldn't we put it in the questionnaire because the charges were dismissed, and then jury number 122, it's because the charges were sealed and did not find, based on her crediting of those explanations, did not find cause. She reiterates that she's going to give the parties an opportunity if they want, because this is new information that was not known to the parties. So given all of that, given how the record bears out in this case, there is no basis for the judge to just ask the prosecutor, well, why are we doing this, when it was clear from the record she knew why they were doing this. She told the parties that they would have the opportunity to do this because evidence had not been disclosed to them when they said they were content with the jurors. So it wouldn't make sense in these circumstances. It seems to me this is premised on an argument that the MAC never should have gone on to analyze it as a potentially preserved Batson challenge, to say it fails at step one. Potentially, Your Honor, potentially. If there's no other questions on any of the other issues, I will rest at my brief. Thank you. Thank you, counsel. Would counsel for the appellant please reintroduce herself on the record to begin. Good morning, Your Honor. This is Rosemary Speicher on behalf of Mr. Reddix. I know I only have a minute, and I'm going to speak as quickly as I can. First of all, with respect to the juror issue, the idea that the AG's office is now presenting on behalf of the Commonwealth suggesting that there was no Batson challenge and nobody understood it to be a Batson challenge, so the appeals court didn't evaluate it as a Batson challenge, really puts the onus on what is required for a step one Batson challenge. If you're claiming that the court records are race-based, if you're claiming that there are six jurors that came back with records that are all black, if you're claiming that this is the second black person that's been excused by the Commonwealth based on race, after the judge has found the juror indifferent, it would be a different situation if the judge made a determination that the juror was somehow hiding the information. But the judge even said, this happens all the time. The questionnaire is unclear. There was nothing nefarious about either of these two jurors making any determinations of dismissed cases and cases that were sealed, not bringing them to the attention. Once that happens, that juror then stands in the same exact position as if the record was never run. And they still got challenged by the Commonwealth. Both of them got challenged by the Commonwealth, and the appeals court never evaluated that. And then with respect to the... Can you just point me, what is said to the trial court, as to 122, that indicates what you're now articulating as the ground for the Batson challenge? What is the ground, as opposed to what the MAC seemed to understand had happened? What was said to the trial judge was, they brought up Corey, we brought up Corey again, and we said, this is the second African-American person that's been challenged. My client is African-American, and I'm going to object to the judge. That's what we said. We said Corey, we said African-American, we said the client was African-American, second one that was challenged, and we're objecting. And that satisfies Batson. How does it not satisfy Batson under those circumstances? Just a chance for you to respond. I take it that what they're saying is that in the context of how this developed, what was being said is, I'm objecting because of the running of the Corey as to this juror. I understand the argument, Judge. I just don't think that's what the facts pan out. I think the facts are that there was an argument that, at least in part, the Carmel's challenge of Juror 122 when you combine it with 47 was motivated in part by race. Because once you take away the fact that the juror didn't do anything wrong by not disclosing, and that the juror stands indifferent, then there's no other reason to challenge them but the fact that they were What is our standard of review on habeas of the question of whether this Step 1 Batson challenge was raised? I think you have to determine whether it's an unreasonable application or an interpretation of the facts. Is it a factual question or is it an unreasonable application of law to fact? I think it's a factual determination. If you make that factual determination that the determination of the appeals court not to address this issue, saying there wasn't enough raised to raise a Batson challenge, then it's an unreasonable application of those facts, Judge. That's what I think. And I could just have one more minute to address the statement issue. May I? Thank you. With respect to the statement, opposing counsel made the claim that my client's demur never changed during the interview, in that he didn't start making these statements that the Carmel's used against him until after, or maybe before, this claim on page 24. If you read the entire first 23 pages, they're calling him a murderer. They're calling him a psychopath. They're telling him he's never going to see his grandmother and his mother again. They're telling him that when they sit across from him at trial, and he won't have the opportunity then to say anything, and he's going to be hoping and wishing for that opportunity, it's now or never. That's what they said to this 18-year-old kid, and that's what's wrong, Judge. It's not just page 24 where they go into telling him it's now or never. It's the whole setup. It's calling him a psychopath. It's telling him that he has to do this for his parents, telling him that they have information, they know he's guilty, he has to make this statement now because he doesn't have any other opportunity. That's what made it involuntary. Thank you. Counsel, that concludes argument in this case.